UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JAY JOHNSON,

                Plaintiff,                           **MEMORANDUM & ORDER**

    -against-                                       Civil Action No. 13-3518

ULTRAVOLT, INC.,

                Defendant.
-------------------------------------------------------X

**APPEARANCES:**

**Law Offices of Neil H. Greenberg & Associates, P.C.**
Attorneys for Plaintiff
900 Merchants Concourse, Suite 314
Westbury, New York 11590
By:  Justin M. Reilly, Esq.

**Zeichner Ellman & Krause LLP**
Attorneys for Defendant
575 Lexington Avenue
New York,  New York 10022
By:  Phillip S. Rosen, Esq.
      Robert Guttman, Esq.

**HURLEY, Senior District Judge:**

      Plaintiff Jay Johnson ("plaintiff" or "Johnson") commenced this action alleging that defendant Ultravolt, Inc. ("defendant" or "Ultravolt") violated the anti-retaliation provision of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3),  and the New York Labor Law § 215(a)(iii) by filing a separate state court action against him, *Ultravolt, Inc. v. Johnson*, Index No. 13077/13 (Sup. Ct., Suffolk County).  Currently before the Court is defendant's motion for summary judgment dismissing the complaint. For the reasons set forth below, defendant's motion is granted.

## FACTS

The following facts are undisputed, unless otherwise noted:

Plaintiff was hired as a sales application engineer by Ultravolt on or about February 22, 2010. In connection with his employment, Johnson signed a non-disclosure agreement ("NDA"). The NDA provided in pertinent part:

> As defined in this agreement "Confidential Information" shall mean any information, including, but not limited to, trade secrets, business processes, manufacturing processes, business plans, inventions, techniques, data of any kind, drawings, customer lists, financial statements, sales data, proprietary business information of any sort, research or development projects or results, tests, and/or any non-public information which concerns the business, operations, ideas, or plans of a party to this Agreement conveyed to the other party by any format or means including, but not limited to, written, typed, magnetic, or orally transmitted.
> . . . .
>
> The confidential information which is disclosed to the UNDERSIGNED shall remain the exclusive property of [UltraVolt]. Any products, processes, know-how, inventions, information or data developed by the UNDERSIGNED during the term of this agreement and for a period of six months thereafter shall also be treated as confidential information.
>
> In consideration of receiving the confidential information, the UNDERSIGNED agrees, by its signature below, that it shall not use any of the confidential information for any purpose other than the purposes described above, unless otherwise agreed to in writing by [UltraVolt], and shall maintain that information with the same degree of care that the UNDERSIGNED employs with respect of it own proprietary information which it desires to keep confidential. The UNDERSIGNED will treat the confidential information with such care and will not disclose it to others.
>
> The obligation of confidentiality shall survive termination of the Agreement . . . .
>
> Upon termination of this agreement for any reason, the UNDERSIGNED shall return to [UltraVolt] all confidential information, including documents and materials received from [UltraVolt] or generated by the UNDERSIGNED. . . .

(Ex. 1 to Pawluk Declar. (DE 22-11).)  Plaintiff left Ultravolt on or about December 16, 2011. He started a new job at Richardson RFPD on December 19, 2011, the following Monday.  In an email dated December 23, 2011 to his former immediate superior, Johnson wrote "all of my notes were entered into the ACT Database as required.  I do not have any customer information." (Ex. 2 to Pawluk Declar. (DE 22-12).)  Johnson contends that he was providing a response to a question about specific customers and that he responded accordingly that he did not have any customer information about those specific customers.  (Pl.'s Ex. E at 71-72.)

On March 26, 2012, Johnson commenced an action claiming, inter alia, that he was entitled to damages in the form of overtime pay and liquidated damages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* and the New York Labor Law.  *See Johnson v. UltraVolt, Inc.*, 12-CV-1476 (E.D.N.Y.) ("*Johnson I*").  Pursuant to the Compliance Conference Order in Johnson I, the parties had until November 9, 2012 to amend their pleadings.  In December 2012, Johnson provided certain responses to defendant's document demands in *Johnson I.*  The parties dispute how these documents should be labeled.  Johnson claims the documents at issue are "spreadsheets and summaries he created on an ongoing basis to track his sales and commissions during the course of his employment." (DE 25-1 at ¶¶ 6-9.) Ultravolt, on the other hand, categorizes them as documents "containing Confidential Information including (I) lists of Ultravolt customers, (ii) sales data, (iii) commission reports, (iv) product information, and (v) sales projections.  (DE 22-1 ¶ 6; *see also id.* at ¶¶7-9.)   However labeled, the documents contain names of Ultravolt customers, as well as sales and product information.  (Pl.'s Ex. D; Johnson Dep. at 74-95.).)

On February 18, 2013 an email was received on Johnson's old Ultravolt email account

from Matthew Terraciano of Photonix, an Ultravolt customer, which stated, in relevant part, "If you have any interest in any of these products, you can contact Jay Johnson. He used to work at UltraVolt, our HV power supply vendor." Included in the email chain was an email from "Jay Johnson [mailto: Jjohnson@RichardsonRFPD.com]" to Matthew Terraciano with the subject "Richardson RFPD", which began "Thanks for taking the time to meet with me. For your files I have attached our most current power products linecard, the combined *Power/RF* linecard and a summary of the Recom power supplies we discussed." (Ex. 3 to Pawluk Declar. (DE 22-13). )

On or about May 15, 2013 Ultravolt commenced an action against Johnson in the Supreme Court Suffolk County ("State Court Action") alleging breach of contract and unfair competition, seeking unspecified compensatory and punitive damages. (*See* Ex. 1 to Rosen Decl. (DE 22-3).)

On June 21, 2013, Johnson commenced the instant action asserting that the filing of the State Court Action violated the anti-retaliation provision of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3), and the New York Labor Law § 215.

## LEGAL STANDARDS

### I.  Standard for Summary Judgment Motion

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing

4

law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)), and cannot rely on the allegations in his or her pleadings, on conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible," *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citations omitted). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The district court, in considering a summary judgment motion, must also be mindful of the underlying burdens of proof because "the evidentiary burdens that the respective parties will

bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, "the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the" non-movant's claim. *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to present sufficient evidence in support of his claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.'" *Id.* at 211 (citing *Matsushita*, 475 U.S. at 587).

**II. Standard for FLSA Retaliation Claims**

The FLSA provides that it shall be unlawful for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding ...." 29 U.S.C. § 215(a)(3). "FLSA retaliation claims are subject to the [ *McDonnell Douglas* ] three-step burden-shifting framework." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir.2010) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)); *see Perez v. G & P Auto Wash Inc.*, 930 F. Supp. 2d 423,436 (E.D.N.Y. 2013).

To establish a prima facie case of FLSA retaliation, a plaintiff must show: "(1) participation in protected activity known to defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins*, 626 F.3d at 53. "[A] causal connection between an adverse action and a plaintiff's protected activity may be established

through evidence of retaliatory animus directed against a plaintiff by the defendant . . . or by showing that the protected activity was closely followed in time by the adverse action." *Id.* (internal quotation marks and citations omitted.)  If the plaintiff is able to do so, "the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the . . . action." *Id.* (internal quotation marks and citation omitted).  If the defendant is able to show a legitimate, non-discriminatory reason, "the plaintiff must produce sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." *Id*. at 53-54 (internal quotation marks and citation omitted).

## DISCUSSION

### I. The Evidence Does Not Support a Rational Inference of Retaliation

Where, as here, the question of whether the plaintiff has met his prima facie burden is indistinguishable from the question of whether the employer's actions merely served as a pretext for retaliation, "a court may simply assume that a plaintiff has established a prima facie case and skip to the final step in the *McDonnell Douglas* analysis." *Idrees v. City of New York*, 2009 WL 142107, at *9 (S.D.N.Y. Jan. 21, 2009) (citing cases); see also *Jimenez v. Donahoe*, 968 F. Supp.2d 609, 618 (S.D.N.Y. 2013); *Howard v. MTA Metro-North Commuter R.R.*, 866 F. Supp.2d 196, 205 (S.D.N.Y. 2011. This is because a plaintiff who can prevail at the third stage of the McDonnell Douglas process has necessarily demonstrated circumstances giving rise to an inference of discrimination, and a plaintiff who cannot prevail at the third stage cannot prevail on his/her claim whether or not there exist circumstances giving rise to an inference of discrimination. To avoid redundancy, the Court will therefore assume plaintiff has demonstrated

an inference of discrimination and move on to the second and third stages of the *McDonnell Douglas* analysis. *See Morris v. Ales Grp. USA, Inc.*, 2007 WL 1893729, at *7 (S.D.N.Y. June 29, 2007).

In support of its motion, defendant maintains there is no evidence of retaliatory intent because, although the state court action is still being litigated, the following documentary evidence provides a firm basis for the claims in that action: Johnson breached the NDA by taking, inter alia, customer information, sales data, and product pricing when he resigned from Ultravolt; Johnson represented when he resigned that he had no customer information, which representation was false in view of the documents he produced in *Johnson I*; and Johnson attempted to solicit at least one Ultravolt customer using that customer stolen information. In addition to the foregoing, Defendant also relies on the fact that it did not commence the State Court action until it became clear during Johnson's deposition that he improperly retained and used the confidential information and accordingly violated the terms of the NDA.

Plaintiff maintains that he has raised a question of facts as to retaliatory animus. In this regard, he asserts that (1) the non-disclosure agreement does not have a provision restricting his future employment or a provision precluding him from soliciting customers of Ultravolt; (2) there is an extremely small amount of crossover between the high voltage power supplies manufactured by Ultravolt and the power supplies distributed by his current employer; (3) Photonix is the only customer that Ultravolt has evidence that he solicited and there is no evidence of any business that Ultravolt lost because of plaintiff; (4) fifteen months after the filing of the State Court Action, the Chief Financial Officer of Ultravolt does not know what specific monetary damages Ultravolt is claiming in that action. (Pl.'s Opp. Mem. at 4-6.) Plaintiff also

asserts that retaliatory animus played a part in defendant's decision to file the State Court Action as evidenced by the inclusion of a claim for unfair competition and the concomitant claim for punitive damages.

For the reasons set forth below, the Court concludes that plaintiff has failed to produce sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not retaliation was a reason for the filing of the State Court Action.

The Court turns first to plaintiff's argument that a discriminatory animus may be inferred because the non-disclosure agreement does not restrict his future employment or preclude him from soliciting Ultravolt customers.  This argument might be persuasive if plaintiff had **not** remained in possession of information concerning Ultravolt's customers, sales and product data after leaving Ultravolt. That, however, it not the case.

The NDA defines confidential information to include, inter alia, customer lists and sales data, as well as information or data developed by the employee and provides that (1) the employee shall not use any of the confidential data for any purpose other than for the purpose of engineering and developing products for Ultravolt's own use as well as for its customers/clients, (2) the obligations survive termination and (3) upon termination, the employee shall return to Ultravolt all confidential information, including documents and materials received from Ultravolt or generated by the employee.  The documents produced by plaintiff in *Johnson I* contain customer names and sales data, which information is included in the definition of confidential information, and that plaintiff remained in possession of it after his employment with Ultravolt terminated  provides a reasonable basis in fact for the State Court Action, especially in view of

the email evidencing plaintiff thereafter solicited one of Ultravolt's customers.

Nor does the fact that the amount of crossover between the high voltage power supplies manufactured by Ultravolt and the power supplies distributed by his current employer is "extremely small" evidence a retaliatory intent. Ultravolt is entitled to protect that crossover, no matter the size. In any event, the email chain from Matthew Terraciano of Photonix references a discussion of "power supplies." (Ex. 3 to Pawluk Declar. (DE 22-13).[1]

Ultravolt's inclusion of a claim for unfair competition does not, in the circumstances of this case, provide evidence of a retaliatory animus. A cause of action for unfair competition may be predicated "upon the alleged bad faith misappropriation of a commercial advantage belonging to another by the exploitation of proprietary information or trade secrets." *Out of Box Promotions, LLC v. Koschitzki*, 55 A.D.2d 575, 578, 866 N.Y.S.2d 677, 681 (2d Dept. 2008) (internal quotation marks and citations omitted). Here, Ultravolt had substantial unrefuted evidence to support that assertion. Johnson retained customer, sales and product information after he left Ultravolt and there is evidence he used that information. At his deposition, plaintiff admitted that he contacted Matthew Terraciano at Photonix "[b]ecause [he] knew of the company and they were not listed in [his] assigned accounts at Richardson, so [he] thought there could be potential there." (Johnson Dep. at 122-23.)

Finally, that Ultravolt's evidence of customer solicitation is limited to only Photonix and that the Chief Financial Officer of Ultravolt does not know what specific monetary damages Ultravolt is claiming in the State Court Action does not permit an inference of retaliatory intent

---

[1] While plaintiff's memorandum assails the email because he was not questioned about it at his deposition, he has not submitted an affidavit denying that he sent it.

in the absence of evidence as to the status of the State Court Action. In his deposition, the Chief Financial Officer references Ultravolt's efforts to take Photonix's deposition indicating that discovery in that action was ongoing. (See Pl.'s Ex. G) Indeed, plaintiff does not submit evidence that discovery in State Court Action is complete, or even as to the amount of discovery that was taken. Nor does plaintiff deny soliciting Photonix or other customers of Ultravolt. As noted earlier, plaintiff admitted that he contact Matthew Terraciano at Photonix "[b]ecause [he] knew of the company and they were not listed in [his] assigned accounts at Richardson, so [he] thought there could be potential there. (Johnson Dep. at 122-23.) He also admitted that in addition to Photonix, there are other customers that he serviced at Ultravolt that he now services at Richardson. (Johnson Dep. at 110-111.)

In support of its position, plaintiff relies upon *Spencer v. International Shoppes, Inc.*, 2010 U.S. Dist. LEXIS 30912 (E.D.N.Y. March 29, 2010). *Spencer*, however, is factually dissimilar to the instant case. In *Spencer*, the defendant commenced the claimed retaliatory action two months after plaintiff filed his complaint with the New York Division of Human and "more importantly Defendants' claims [were] based on Plaintiff's statements in August 2002 and thus could have been asserted" almost two years earlier. *Id.* at *33-34. In addition, the *Spencer* defendant's lawsuit sought six million dollars in damages. Such is not the case here. Johnson points to no evidence that Ultravolt was aware of his retention of confidential information or any solicitation of its customers before he commenced *Johnson I*. Nor does Ultravolt seek an exorbitant amount of damages in the State Court Action; its damages are specified in the state court complaint.

In sum, plaintiff has not produced sufficient evidence to support a rational finding that the

legitimate, non-discriminatory reasons proffered by the defendant for its commencement of the State Court Action were false, and that more likely than not retaliation was a reason for the action. Accordingly, defendant is entitled to summary judgment on plaintiff's FLSA retaliation claim.

## II. Plaintiff's State Law Retaliation Claims are Dismissed without Prejudice.

Having found that Plaintiff's FLSA claim cannot withstand summary judgment, there is no longer any independent basis for federal jurisdiction in the within action. Although the Court has the discretion to exercise supplemental jurisdiction over Plaintiff's remaining New York Labor Law claim, it declines to do so as resolution of the state claim may[2] require the determination of additional factual and legal issues. *See* 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); *N.Y. Mercantile Exch., Inc. v. Intercontinental Exch., Inc.*, 497 F.3d 109, 119 (2d Cir. 2007) ( holding that dismissal of remaining state claims after the dismissal of federal claims is particularly appropriate where the resolution of the state law claims entails resolving additional legal and factual issues). "While discovery has been completed and the instant case proceeded to the summary judgment stage, it does not appear that any discovery would need to be repeated if [Plaintiff's] pendent claim [] [was] brought in state court." *Tishman v. The Associated Press,* 2007 U.S. Dist. LEXIS 85588, at *28-29 (S.D.N.Y. Nov. 19, 2007). Moreover, "'[s]ince [New York CPLR § 205] allows a plaintiff to recommence a dismissed suit within six months without regard to the statute of

---

[2] Neither party addresses the applicable standard for the claim asserted pursuant to N.Y. Labor Law § 215 (a) (iii).

12

limitations,' plaintiff[] will not be prejudiced by the dismissal of [her NYSHRL] claim[]." *Id.* (quoting *Trinidad v. N.Y. City Dept. of Corr.*, 423 F. Supp. 2d 151, 169 (S.D.N.Y. 2006) (alterations in original) (additional citations omitted).

Accordingly, plaintiff's New York Labor Law claim is dismissed without prejudice.

## CONCLUSION

For the foregoing reason, defendant's motion for summary judgment is granted. Plaintiff's FLSA claim is dismissed with prejudice and the New York Labor Law claim is dismissed without prejudice. The Clerk of Court is respectfully requested to enter judgment accordingly and to close this case.

Dated: Central Islip, New York
February 10, 2015

s/ Denis R. Hurley
Denis R. Hurley
United States District Judge